**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

BMR No. 1 LLC d/b/a
MIKE JUNEAU'S BROOKFIELD BUICK
GMC

and

E.J. SALENTINE, INC. d/b/a
SALENTINE BUICK

Case No. 10-cv-376

      Plaintiffs,

  v.

GENERAL MOTORS LLC

      Defendant.

---

**DEFENDANT GENERAL MOTORS LLC'S BRIEF IN SUPPORT
OF ITS MOTION TO TRANSFER VENUE
TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

## TABLE OF CONTENTS

**Page**

I. BACKGROUND .................................................................................................. 1

    Overview.......................................................................................................... 1

    The Bankruptcy Proceedings And The Issuance Of Wind-Down Agreements................ 2

    The Collateral Attack On The Bankruptcy Court's Orders and Rulings ........................ 6

II. ARGUMENT ................................................................................................... 7

    A.    Transfer Will Promote The Interests Of Justice Given The Prior
           Proceedings In The Bankruptcy Court........................................................ 8

    B.    Transfer Will Promote the Convenience of the Parties ........................... 13

III. CONCLUSION................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

CASES

*Deist v. Washington Univ. Med. Ctr.,* 385 F. Supp. 2d 772 (S.D. Ill. 2005) ................................12

*Edge Petroleum Operating Co., Inc. v. Duke Energy Trading & Marketing, L.L.C.,*
   311 B.R. 740 (S.D. Tex. 2003) ................................................................................13

*Foursquare Props., Joint Venture I v. Akins Keyboard Sales, Inc.,*
   54 B.R. 529 (Bankr. E.D. Wis. 1985) ......................................................................7

*In re Dunmore Home, Inc.,* 380 B.R. 663 (Bankr. S.D.N.Y. 2008) ...............................7

In *re Eagle Enter., Inc.,* 265 B.R. 671 (E.D. Pa. 2001) ..............................................8

*In re Earl Roggenbuck Farms, Inc.,* 51 B.R. 913 (Bankr. E.D. Mich. 1985)..............10

*In re Eclair Bakery Ltd.,* 255 B.R. 121 (Bankr. S.D.N.Y. 2000) ...............................8

*In re Franklin,* 802 F.2d 324 (9th Cir. 1986).............................................................10

*In re ICC Capital Corp.,* 147 B.R. 349 (Bankr. S.D.N.Y. 1992) .................................8

*In re Jenkins,* 993 F.2d 1549, No. 92-2811, 1993 WL 157390 (....................................10

*In re Liberty Music and Video, Inc.,* 50 B.R. 379 (S.D.N.Y. 1985) ...........................10

*In re Millenium Seacarriers, Inc.,* 419 F.3d 83 (2d Cir. 2005).....................................9

*In re Old Carco LLC,* Nos. 09C8875, 8876 (S.D.N.Y. July 2, 2010) .....................9, 10

*In re Old Carco LLC,*
   Opinion Granting Joint Motion For Order Enforcing Automatic Stay, No. 09-5002
   (Bankr. S.D.N.Y. Aug. 31, 2009) ...........................................................................9

*In re Petrie Retail, Inc.,* 304 F.3d 223 (2d. Cir. 2002) ..............................................9

*In re Petrolia Corp.,* 79 B.R. 686 (Bankr. E.D. Mich. 1987).....................................10

*In re Vital Link Lodi, Inc.,* 240 B.R. 15 (Bankr. W.D. Mo. 1999).............................8, 9

*In re Williams,* 256 B.R. 885 (8th Cir. B.A.P. 2001).................................................11

*Kotlicky v. Belford,* 64 B.R. 679 (N.D. Ill. 1986) .....................................................12

*Symbol Tech., Inc. v. Intermec Tech. Corp.,*
   No. 05-C-256-C, 2005 WL 1657091 (W.D. Wis. July 14, 2005)...............................8

*Travelers Indemnity Co. v. Bailey,* 129 S. Ct. 2195, ___ U.S. ___ (2009)...................9

*U.S. v. Mourad,* 289 F.3d 174 (1st Cir. 2002) ..........................................................9

STATUTES

28 U.S.C. § 1404......................................................................................... 8, 12

28 U.S.C. § 1412.............................................................................................1, 7

Pursuant to 28 U.S.C. § 1412 and applicable law, Defendant General Motors LLC ("Defendant" or "GM") moves this Court to transfer this case, which Defendant has removed to this Court and which is currently pending before it, to the United States District Court for the Southern District of New York, for referral to the United States Bankruptcy Court in that District.  In support of this motion, Defendant states as follows:

## I.      BACKGROUND

**Overview**

In the Complaint, Plaintiffs seek to circumvent agreements, orders and opinions approved or issued by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in bankruptcy proceedings filed by General Motors Corporation and certain affiliates (collectively, the "Debtors").  The Bankruptcy Court's orders and opinions expressly allowed the Debtors to assume and assign certain of the Debtors' contracts subject to various terms and conditions and free and clear of other claims.

The Bankruptcy Court ruled *inter alia* that the bankruptcy laws under which the orders and opinions were issued preempted any conflicting state dealer laws, like the Wisconsin statute relied upon by Plaintiffs, and expressly retained exclusive jurisdiction in the Bankruptcy Court to resolve all matters relating to the implementation and enforcement of rulings that are, in essence, challenged by the Complaint.

In the Complaint, plaintiff Salentine alleges that it is authorized to sell and service Buick vehicles and purports to challenge the re-establishment of other Buick operations in Wisconsin.  (*See* Complaint (Exhibit A).)[1]  In connection with the bankruptcy proceedings, however, Salentine executed a Wind-Down Agreement that bars such challenges.  Under the

---

[1] Exhibits A, C, D, E, F, G, and H were filed in connection with Dkt. No. 1, while Exhibit B was filed under seal with Dkt. No. 4.

terms of the Bankruptcy Court's orders, that Wind-Down Agreement was assumed and assigned to GM and governs Plaintiff Salentine's claims here.  The parties expressly agreed that the Bankruptcy Court retained "exclusive" jurisdiction to enforce the terms of the Wind-Down Agreement executed by Salentine and approved by the Bankruptcy Court.[2]  (Exhibit B, ¶ 13.)

**The Bankruptcy Proceedings And The Issuance Of Wind-Down Agreements**

General Motors Corporation ("Old GM") filed for bankruptcy on June 1, 2009. The Bankruptcy Case (No. 09-50026 (Jointly Administered)) is pending before Judge Robert E. Gerber.  In the bankruptcy proceedings, Old GM sought approval to complete a sale of assets to a new company under Section 363 of the Bankruptcy Code subject to various terms and conditions approved by the Bankruptcy Court (the "Section 363 Sale").  In connection with the filing of Old GM's bankruptcy, a purchase agreement was entered into between Old GM and its debtor subsidiaries and a new purchaser (the "Purchase Agreement").  The Purchase Agreement provided, *inter alia*, that the Debtors would sell substantially all of their operating assets to a new purchaser now known as General Motors LLC ("New GM" or Defendant).  On June 1, 2009, the Debtors filed a motion under § 363 of the Bankruptcy Code seeking authorization to proceed with the proposed sale, which was approved after subsequent hearings were held on the proposed transaction.

To help ensure the long term viability of New GM, the Section 363 Sale allowed New GM to strengthen key parts of its business, including modernizing the dealer network by removing poorly performing dealers to allow the new company to compete more effectively with its competitors in the automotive industry.  Old GM, government officials, the Auto Task Force,

---

[2] In addition, the other Plaintiff (Brookfield) signed a Participation Agreement, which was assumed and assigned in the bankruptcy proceedings as well.  The Bankruptcy Court is familiar with those agreements as well and is perfectly situated to opine on the enforceability of those agreements as well.

and industry commentators determined that the dealer network needed to be re-aligned and modernized to allow New GM to compete more effectively in the market.

It was recognized that the realignment and modernization were part and parcel of a difficult and painful bankruptcy. Indeed, many of the parties adversely affected by the bankruptcy process were employees, retirees, stockholders, bondholders, and suppliers, among others. All sacrificed to substantially improve the viability of New GM. To assist the non-retained dealers in transitioning out of the market, the Section 363 Sale allowed an orderly wind-down rather than an abrupt cutoff of those dealerships that were not being retained. Under the Wind-Down Agreements, the non-retained dealers received financial assistance and were permitted to continue certain operations subject to various terms and conditions until October 2010 when their dealer agreements would otherwise expire. Although the dealer agreements could simply have been rejected outright in the bankruptcy proceedings, these Court-approved agreements allowed the individual dealers time and assistance in transitioning out of the business.

In its Decision overruling certain objections, the United States Bankruptcy Court for the Southern District of New York approved the Wind-Down Agreements:

> All concerned with GM's future knew that GM had to slim down and improve its dealer network, and that this required modifying dealer agreements before they were assumed and assigned—a process that led to the Participation Agreements. Similarly, as an alternative to simply leaving dealers who would otherwise be terminated in the lurch, GM proposed giving them a soft landing, in exchange for waivers of other rights – a process that led to the Deferred Termination Agreements [Wind-Down Agreements]. Those offers secured widespread acceptance; 99% of the continuing dealers accepted, and 99% of the dealers who eventually would be terminated took the offer.
>
> The alternative, in each case was rejection. Contract counterparties do not have to accept what they are offered, and they may elect to stand on their rights. But here GM was not

> obligated, as a matter of law, to choose between leaving its dealer
> contracts unmodified or rejecting them.  It could, it if wished, offer
> its contract counterparties deals that would more appropriately
> meet each side's needs and concerns, without fear that such deals
> would be subject to collateral attack by reason of assertions of
> coercion.

Errata Order re Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle

Acquisition Holdings LLC; (2) Assumption and Assignment of Related Executory Contracts;

and (3) Entry into UAW Retiree Settlement Agreement, p. 75-76, No. 09-50026 (Bankr.

S.D.N.Y., July 6, 2009) (Exhibit C at pp. 75-76).  Salentine was among the dealers that executed

a Wind-Down Agreement.  (Exhibit B.)

> In its Wind-Down Agreement, Salentine agreed that:
>
> [I]t will not commence, maintain, or prosecute, or cause,
> encourage, or advise to be commenced, maintained, or prosecuted,
> or assist in the prosecution of any action, arbitration, mediation,
> suit, proceeding, or claim of any kind, before any court,
> administrative agency, or other tribunal or dispute resolution
> process, whether federal, state, or otherwise, to challenge, protest,
> prevent, impede, or delay, directly or indirectly, any establishment
> or relocation whatsoever of motor vehicle dealerships for any of
> the Existing Model Lines.

(Exhibit B ¶ 7(a).)  Salentine also agreed that the Bankruptcy Court "shall retain full, complete

and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of

this Agreement and any other matter related thereto."  (*Id.* ¶ 13.)

> On July 5, 2009, the Bankruptcy Court issued an order approving the proposed

sale of assets.  (Exhibit D; *see also* Ex. C.)  The Bankruptcy Court also authorized the debtors to

assume and assign the Wind-Down Agreements of well over 1,000 other dealers.  (Exhibits C

and D.)  A small number of dealers refused to sign Wind-Down Agreements and the Bankruptcy

Court entered an order rejecting those contracts.  (Exhibit E.)  The Bankruptcy Court issued the

Sale Order after notice to interested parties, including the Plaintiffs and other dealers, and a hearing was held at which any objections were considered and resolved or overruled.

The Bankruptcy Court also found that laws that "impair the ability to reject, or to assume and assign" must be "trumped by federal bankruptcy law." (Exhibit C at p. 78; *see also id.* at p. 79.) The Court found that "[t]he transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances) . . . ." (Exhibit D at ¶ AA.) The same order provided that "[t]he Sellers may sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than Permitted Encumbrances), . . . ." (*Id.* at ¶ BB.) The order further found that "[t]he Purchaser would not have entered into the MPA and would not consummate the 363 Transaction (i) if the sale of the Purchased Assets was not free and clear of all liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), . . . ." (*Id.* at ¶ DD.) Other similar findings are found elsewhere in the order. (*See, e.g., id.* at pp. 22-24.) The Bankruptcy Court expressly retained "exclusive jurisdiction to enforce and implement the terms and provision of th[e] Order, the MPA, all amendments thereto, any waiver and consents thereunder, and each of the agreements executed in connection therewith, including the Deferred Termination Agreements [Wind-Down Agreements], in all respects, . . . and (f) resolve any disputes with respect to or concerning the Deferred Termination Agreements, " among other things. (*See id.* at p. 48.)

Notwithstanding the provisions of the Wind-Down Agreement barring Salentine's Complaint and the court orders approving the assumption and assignment of the Wind-Down

Agreement free and clear of any other claims, Salentine filed its Complaint protesting the re-establishment of Buick representation in Waukesha, Wisconsin.  (*See* Ex. A, Complaint.)  That is directly contrary to the express terms to which Salentine agreed in the Wind-Down Agreement, which was assumed and assigned in the bankruptcy proceedings and over which the Bankruptcy Court retains exclusive jurisdiction.[3]

**The Collateral Attack On The Bankruptcy Court's Orders and Rulings**

The Complaint completely disregards the Bankruptcy Court's Sale Order and rulings issued in connection with that Order and the effect of those rulings on contractual rights under federal bankruptcy law, specifically as they relate to rights under the Salentine Wind-Down Agreement and under Wisconsin state statutes.  Despite the clear terms of the Wind-Down Agreement and the Court's conclusions in the Sale Order and other rulings that the assumption and assignment of specified agreements benefited the bankruptcy estate, Plaintiffs essentially claim that the right to protest the reestablishment of Buick operations was not in fact extinguished or waived by the orders approving the sale or by federal bankruptcy law authorizing the Wind-Down Agreements.

The litigation and outcome of the Complaint is virtually certain to have an impact on the Bankruptcy Court's findings and conclusions of law in the Sale Order relating to the Debtors' bankruptcy estate.  Plaintiffs' Complaint threatens to impede the administration of the Debtors' estate by interfering with the Bankruptcy Court's findings regarding the enforceability of the Wind-Down Agreements, the decisions made as to which contracts would be assumed and

---

[3] In December, 2009, federal legislation was passed under which certain non-retained dealers could file for arbitration, seeking a letter of intent under which they could be added back to or reinstated in New GM's dealer network.  In connection with those arbitration proceedings, GM offered Salentine a letter of intent to continue dealer operations if Salentine satisfied various terms and conditions and agreed to execute agreed-upon modifications to the Wind-Down Agreement.  Salentine has not yet satisfied those conditions and has not yet executed an amendment to the Wind-Down Agreement.  Accordingly, the Wind-Down Agreement remains in full force and effect and, in any event, was in full force and effect at the time that Salentine filed the Complaint under any scenario.

assigned free and clear, the scope of the Bankruptcy Court's retention of exclusive jurisdiction regarding any collateral attacks on its findings, and its ability to enforce the Sale Order and related rulings approving the Wind-Down Agreements.

The Complaint will affect the Court's sale order by seeking to compel continuing "rights" of dealers to block needed dealer network changes after the Bankruptcy Court ruled that the Wind-Down Agreements were necessary.  The Bankruptcy Court found that a modernized and realigned dealer network was essential to the Debtors' viability plan, the 363 Sale, and the new company's ability to compete in the automobile marketplace going forward.  The Bankruptcy Court further found that the transaction was the only viable option for the Debtors, with the only alternative being liquidation.  (*E.g.*, Exhibit C at pp. 3, 1, 25.)  Plaintiffs' intentional interference with the assumption and assignment process expressly authorized by the Bankruptcy Court and the contracts approved as part of that process undermines the financial objectives of the bankruptcy proceedings.

## II.    ARGUMENT

Section 1412 of Title 28 of the United States Code provides that "[a] district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice *or* for the convenience of the parties."  (Emphasis added.)  Thus, a district court may transfer under Section 1412 upon a sufficient showing of the interest of justice or for the convenience of the parties.  "Section 1412 is worded in the disjunctive allowing a case to be transferred under *either* the interest of justice rationale or the convenience of parties rationale." *In re Dunmore Home, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (emphasis in original). *See also generally  Foursquare Props., Joint Venture I v. Akins Keyboard Sales, Inc.,* 54 B.R. 529, 531 (Bankr. E.D. Wis. 1985) (granting motion to transfer from Eastern District of Wisconsin to Western District of Michigan, where debtor's Chapter 11 bankruptcy case was

pending).  The Complaint goes to the very heart of the Bankruptcy Case and Section 1412 governs the issue of venue transfer in this action.[4]  The granting or denial of a motion to transfer venue is discretionary with the Court.  *See id.*

### A.    Transfer Will Promote The Interests Of Justice Given The Prior Proceedings In The Bankruptcy Court

This Court should transfer the matter to the Bankruptcy Court of the Southern District of New York because such transfer will promote: (a) efficient administration of the bankruptcy estate; (b) judicial economy; (c) timeliness; and (d) fairness.  *In re Eclair Bakery Ltd.*, 255 B.R. 121, 141 (Bankr. S.D.N.Y. 2000).  "The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process."  *In re Vital Link Lodi, Inc.,* 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999)

Here, the presumptive rule in favor of transfer is supported by a clear majority of the factors the Court should consider.  The Bankruptcy Court expressly retained jurisdiction over claims to enforce and implement the terms and provisions of the order, including disputes related to the Wind-Down Agreements.  (Exhibit D at p. 48.)  It did so because adjudication of claims like the Complaint here, which are predicated on the Wind-Down Agreements approved in the Bankruptcy Court's Sale Order and related rulings, "could interfere with an orderly resolution of the bankruptcy proceedings."  *In re Eagle Enter., Inc.,* 265 B.R. 671, 681 (E.D. Pa. 2001) (also noting that bankruptcy judge has broad equitable powers that exceed the limits of the automatic

---

[4] Even if the Court determines that 28 U.S.C. § 1404 is the governing statute for this motion, transfer of the Complaint is still warranted because the criteria under § 1404 are the same as the criteria under Section 1412.  *See In re ICC Capital Corp.,* 147 B.R. 349, 356 (Bankr. S.D.N.Y. 1992) ("The factors courts consider in determining a motion under section 1404(a) are the same as those considered in deciding a motion under section 1412."); *Symbol Tech., Inc. v. Intermec Tech. Corp.,* No. 05-C-256-C, 2005 WL 1657091, *2-*3 (W.D. Wis. July 14, 2005) (evaluating transfer motion under Section 1404; also noting that "question is whether plaintiff's interest in choosing forum is outweighed by either convenience concerns of the parties and witnesses or interest of justice") (citation omitted).

stay and permit judge to enjoin commencement or prosecution of collateral proceedings; tortious interference context).  The resolution of Plaintiffs' claims requires the interpretation of and application of the Bankruptcy Court's Sale Order, Sale Opinion, and other rulings.  Indeed, the Complaint violates the terms of the Bankruptcy Court's rulings.  Therefore, to achieve judicial efficiencies in the administration of the Bankruptcy matters, any judgment in Plaintiffs' Complaint should be entered by the Bankruptcy Court.  *In re Vital Link Lodi,* 240 B.R. at 21 ("any judgments in the lawsuits filed by these warring parties could have a significant impact on the possible reorganization of the California Chapter 11 debtors.  Therefore, it seems appropriate that the California bankruptcy court should be the one to decide whether the Jackson County lawsuit should be tried in the Missouri state court or in the California bankruptcy court.").

It is well-settled that a bankruptcy court retains continuing jurisdiction to interpret and enforce its own orders.  *See Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205, ___ U.S. ___ (2009) ("the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own orders"); *In re Petrie Retail, Inc.,* 304 F.3d 223, 230 (2d. Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization"); *U.S. v. Mourad,* 289 F.3d 174, 180 (1st Cir. 2002) (stating that even if the bankruptcy case was closed, the court would still not have lost jurisdiction to enforce its order); *In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 97 (2d Cir. 2005) (concluding that "[b]ankruptcy courts retain jurisdiction to enforce and interpret their own orders"); *see also In re Old Carco LLC*, Opinion Granting Joint Motion For Order Enforcing Automatic Stay, No. 09-5002 (Jointly Administered) (Bankr. S.D.N.Y. Aug. 31, 2009) (Exhibit G), *affirmed*, Nos. 09C8875, 8876, Decision and Order (S.D.N.Y. July 2, 2010) (Exhibit H).  This continuing jurisdiction arises from the power of a federal court to implement, enforce or

clarify its prior decrees. *See In re Liberty Music and Video, Inc.,* 50 B.R. 379, 384-85 (S.D.N.Y. 1985); *see also In re Franklin,* 802 F.2d 324, 326 (9th Cir. 1986) ("bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the manner intended"). As the United States District Court for the Southern District of New York explained just a few days ago in the Chrysler proceedings, "[t]he Supreme Court has long-recognized the power of courts to interpret and enforce their own prior orders. Here, as in Travelers Indemnity, the Bankruptcy Court explicitly retained jurisdiction to enforce both the Sale and Rejection Orders." *In re Old Carco LLC*, Nos. 09C8875, 8876, at p. 16 (internal citation omitted) (Ex. H). The Court also explained that "it is difficult for this Court to imagine how the Bankruptcy Court's interpretation of its own prior orders, both of which were integral to, and issued in due course of, a chapter 11 proceeding, could be interpreted ex post facto as anything other than related to the Bankruptcy itself." (*Id.* at p. 17.)

A bankruptcy court retains jurisdiction over its orders to resolve disputes as to what was intended by the terms of its orders and whether parties have complied with or violated those orders. *See In re Earl Roggenbuck Farms, Inc.,* 51 B.R. 913, 925-26 (Bankr. E.D. Mich. 1985). A federal court sitting in bankruptcy may also take jurisdiction of ancillary claims connected to its prior orders. *E.g., In re Personal Computer Network; Inc.,* 97 B.R. 909, 911-12 (N.D. Ill. 1989) (court has jurisdiction over dispute between purchaser of debtor's telephone numbers and other, non-debtor telephone company); *see also generally In re Petrolia Corp.,* 79 B.R. 686, 688-89 (Bankr. E.D. Mich. 1987); *In re Jenkins,* 993 F.2d 1549, No. 92-2811, 1993 WL 157390, at **2 (7th Cir. May 14, 1993). Bankruptcy courts have jurisdiction over proceedings to determine the effect of prior orders entered by the bankruptcy court. *See, e.g., In*

*re Williams,* 256 B.R. 885, 892 (8th Cir. B.A.P. 2001).  In this case, moreover, Salentine also expressly agreed that the Bankruptcy Court retained exclusive jurisdiction over enforcement of the Wind-Down Agreement that Salentine executed.  (Exhibit B ¶ 13.)

       In addition to promoting efficient administration of the Bankruptcy Estate, transfer of the matter to the Southern District of New York will promote judicial economy. Having a common forum in New York to adjudicate common questions of law, such as whether the Wind-Down Agreement is enforceable, or whether the Bankruptcy Court's orders preempt state law, will be more economical.  Only one forum, the Bankruptcy Court, should resolve all questions and claims about its own rulings approving the sale, the assumption and assignment of specified contracts, and the approval of the Wind-Down Agreements with dealers.  That conclusion is only buttressed by the fact that Plaintiffs' claims relate to a very large and complex bankruptcy case, a case in which hundreds of dealers, located throughout the 50 states, who signed substantially identical Wind-Down Agreements could potentially file similar actions in the multitude of states where they do business.  The Bankruptcy Court for the Southern District of New York has already advanced along a substantial "learning curve" with respect to the Wind-Down Agreements.

       Transfer to the Bankruptcy Court for the Southern District of New York will also promote fairness.  It is unfair to GM and the Debtors to have any forum decide Plaintiffs' claims other than the Bankruptcy Court that entered the orders and rendered the decisions that the Complaint attempts to avoid, under the guise of "state law," through the removed Complaint.  It is also unfair to other creditors of the Debtors' estate to have a cause of action such as the Complaint resolved in this forum when the result will impact Bankruptcy Court orders.[5]

---

[5] There can be no question of the Bankruptcy Court's competency to fairly adjudicate Plaintiffs' claims.

Wisconsin's interest in having local controversies decided within its borders is not controlling in this case. The Complaint is intended to circumvent decisions made and orders entered by the Bankruptcy Court in New York. The Debtors' decision to assume and assign specified contracts, the purchaser's decision to proceed with the sale under the terms and protections of the Bankruptcy Court's orders, and the decision to enter into Wind-Down Agreements with hundreds of dealers across the country was an act of national significance and those actions have already been the subject of judicial review. The Complaint must be decided in that context.

Likewise, although a plaintiff has an interest in selecting the forum, that interest is given less weight where another forum has a stronger relationship to the dispute. *See Deist v. Washington Univ. Med. Ctr.,* 385 F. Supp. 2d 772, 773-74 (S.D. Ill. 2005) (section 1404 context). Here, the Bankruptcy Court for the Southern District of New York has the greatest interest in adjudicating the Complaint because this dispute is inextricably intertwined with the sale process approved by the Bankruptcy Court, the decisions made to enter into the Wind-Down Agreements, and the objective of creating a strong viable company on a going forward basis. For all of these reasons, the interests of justice weigh in favor of the Bankruptcy Court as the appropriate venue.

### B.      Transfer Will Promote the Convenience of the Parties

Transfer to the Bankruptcy Court for the Southern District of New York will also promote the convenience of the parties. Factors to consider in analyzing Section 1412's convenience element may include: (a) the proximity of creditors to the Court; (b) the proximity of the Debtors to the Court; (c) the proximity of the witnesses necessary to the administration of the estate; (d) the location of the assets; and (e) the economic administration of the estate. *Kotlicky v. Belford,* 64 B.R. 679, 682 (N.D. Ill. 1986). There is a "general rule that the court

where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction." *Id*. (N.D. Ill. 1986) (quotation and citation omitted). "The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate." *Id.* By allowing the Bankruptcy Court to decide Plaintiffs' claims, "[n]ot only is the amount of duplicated effort on the part of the parties and the judiciary decreased, but keeping all of the related disputes together removes the danger of one action unproductively interfering with the other. It also helps avoid the hazard of inconsistent adjudications that can result from parallel and/or piecemeal litigation." *Edge Petroleum Operating Co., Inc. v. Duke Energy Trading & Marketing, L.L.C.,* 311 B.R. 740, 745 (S.D. Tex. 2003) (granting transfer to district where bankruptcy proceeding was pending) (transferring under Section 1404).

      The vast majority of the creditors are located all around the United States. However, many of those creditors are currently being represented in the Bankruptcy Court proceedings in the Southern District of New York. Likewise, most of the Debtors' major business decisions relating to ongoing bankruptcy proceeding are made in New York before the Bankruptcy Court where the Bankruptcy Case is currently pending. These factors, coupled with the existing Bankruptcy Case action in the Southern District of New York, make the Southern District of New York the more appropriate venue.

      The facts pertinent to GM on each of these factors likewise dictate that Wisconsin is not the most convenient forum. The decision to purchase certain assets, the process by which that sale transaction was litigated, and the witnesses that testified in support of that sale all emanated out of the Bankruptcy Court in the Southern District of New York. This case is an attempt to set in motion a process that has the potential to undermine court orders designed to

- 13 -

ensure the viability of the new company, by trying to relitigate issues that were already presented to, and decided by, the Bankruptcy Court. When properly viewed in this context, there can be no question that the Bankruptcy Court for the Southern District of New York is the only forum that should be litigating claims at issue.

## III.   CONCLUSION

In this case, transfer is presumptively appropriate because there is a related bankruptcy action pending in New York. Additional considerations of judicial economy and basic economic efficiency also dictate that all matters be heard by one court. Accordingly, Defendant respectfully requests that this Court enter an order transferring venue to the United States District Court for the Southern District of New York, for referral to the United States Bankruptcy Court in that District.

July 15, 2010

Respectfully submitted,

By: _s/Douglas M. Poland_____
     Douglas M. Poland (State Bar. #1055189)
     Godfrey & Kahn, SC
     One East Main Street, Suite 500
     P.O. Box 2779
     Madison, Wisconsin  53703
     608-257-3911
     dpoland@gklaw.com

and

OF COUNSEL
Jeffrey J. Jones (Ohio Bar #0030059)
Jones Day
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, Ohio  43216-5017
614-469-3939
jjjones@jonesday.com

*Attorneys for Defendant General Motors LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2010, I caused the foregoing document to be electronically filed with the Clerk of Court using the ECF system, which will make this document available to all counsel of record for viewing and downloading from the ECF system.


*<u>s/Douglas M. Poland</u>*
*One of the Attorneys for Defendant General Motors LLC*


5196166_1